UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IGOR PEULIC,
    Petitioner,

v.                                      CIVIL ACTION NO. 1:19-10687-MPK[1]

ANTONE MONIZ,
    Respondent.

MEMORANDUM AND ORDER
ON PETITION FOR WRIT OF HABEAS CORPUS (#1).

I. Introduction.

Igor Peulic petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (#1.) In May 2015 a grand jury indicted Peulic on the following charges as a result of a confrontation with a Chelsea, Massachusetts police officer that occurred on February 1, 2015: assault with a dangerous weapon (Mass. Gen. Law ch. 265, § 15B); carrying a firearm without a license (Mass. Gen. Law ch. 269, § 10(a)); unlawfully carrying a loaded firearm (Mass. Gen. Law ch. 269, § 10(n)); and discharging a firearm within 500 feet of a dwelling (Mass. Gen. Law ch. 269, § 12E). (#1-5 at 567–70.) A jury trial was held from March 29 to April 1, 2016, in the Suffolk Superior Court. *Id.* at 3. Peulic was convicted on all charges. *Id.* at 555.[2]

Peulic appealed. On April 13, 2018, the Massachusetts Appeals Court (MAC) affirmed his convictions in an unpublished decision. *Commonwealth v. Peulic*, 93 Mass. App. Ct. 1106, 103

---

[1] With the parties' consent, this case has been assigned to the undersigned for all purposes, pursuant to 28 U.S.C. § 636(c). (#12.)

[2] Justice Elizabeth Fahey sentenced Peulic to four to five years in state prison on the assault charge, with concurrent sentences of four to five years in state prison on the charge of carrying a firearm without a license, and three months in the house of correction on the charge of discharging a firearm within 500 feet of a dwelling. He received a suspended sentence of two and one half years in the house of correction on the charge of unlawfully carrying a loaded firearm. (#1-5 at 563-64.)

N.E.3d 771 (Table), 2018 WL 1770245 (Mass. App. Ct. Apr. 13, 2018); #1-5 at 3-4. On April 17, 2018, Peulic filed a petition for rehearing, which the MAC denied. *Id.* Peulic then filed a "renewed petition for rehearing," arguing that the MAC violated his due process rights by upholding his guilty verdict on appeal on a factual basis not presented to the jury at trial. *Id.* The MAC treated Peulic's submission as a motion for reconsideration, allowing the motion to reconsider, but upholding its initial decision affirming Peulic's convictions. *Id.* at 4. The Massachusetts Supreme Judicial Court (SJC) denied further appellate review. *Commonwealth v. Peulic*, 480 Mass. 1102, 104 N.E.3d 665 (Table) (2018); #1-5 at 5.

On April 10, 2019, Peulic filed this petition, challenging only his conviction for assault with a dangerous weapon. (#1-1 at 6.) The claim has been fully briefed. (##1-1, 18, 20.) For the reasons set out below, the petition is denied.

II.  Statement of Facts.

The MAC recounted the following facts, summarizing what "[t]he jury could have found" at Peulic's trial:[3]

> In the early morning of February 1, 2015, Chelsea police Officer Rafael Serrano was on patrol in Bellingham Square in Chelsea when he heard two gunshots. Serrano looked up, heard a third gunshot, and saw a muzzle flash in a crosswalk approximately 400 feet from where he was parked. A man, later identified as [Peulic], was in the crosswalk near the muzzle flash.
>
> As Serrano approached in his cruiser, he saw [Peulic] try to conceal a firearm in his clothing. Before [Peulic] could do so, Serrano yelled, "Stop, police[,]" and exited his cruiser with his weapon in hand. [Peulic] fled with the firearm in his right hand, as Serrano pursued him on foot. Serrano could see the firearm in [Peulic's] hand during the entire pursuit.

---

[3] Under 28 U.S.C. § 2254 (e)(1), facts found by a state trial or appellate court are presumed to be correct. *Gaskins v. Duval*, 640 F.3d 443, 452 (1st Cir. 2011). The petitioner bears the burden of rebutting the presumption "with clear and convincing evidence." *Id.* (citation omitted). Federal courts therefore "take the facts of conviction as recounted by the [state appellate court] when it affirmed [the petitioner's] conviction on direct appeal, supplementing [them] with other record facts consistent with the [appellate court's] findings." *Id.* at 445.

> Chelsea police Officer Joseph Capistran was parked near Bellingham Square when he heard gunshots and a report over his radio that another officer was following the suspect on foot. Capistran drove to Chestnut Street, exited his cruiser, and saw [Peulic] run around the corner with "his right hand raised" and holding a firearm. Capistran yelled a number of times, "Drop the gun," but [Peulic] instead ran up the sidewalk and momentarily disappeared behind a van. When he emerged, [Peulic] took a few steps with the firearm at his right thigh, causing Capistran to give three more verbal warnings to drop the gun. [Peulic] stopped, turned to face Capistran, who was about fifteen feet away, and "raise[d]" the firearm to about waist level in a "threatening manner." The firearm was high enough that Capistran "was able to see the hole at the end of the barrel." Believing that he was in immediate danger, Capistran fired three rounds, hitting [Peulic].
>
> Meanwhile, Serrano was still pursuing [Peulic] on foot when he heard someone yelling "drop the gun," after [Peulic] ran onto Chestnut Street. When Serrano turned the corner, he saw [Peulic] on the sidewalk and Capistran in the street giving orders to drop the gun. Serrano observed as [Peulic] turned toward Capistran and "raised" the firearm to about waist level. Capistran then fired his weapon three times.

(#1-5 at 737–39.)

At trial, the prosecutor said in her opening statement that, before Officer Capistran fired his weapon, Peulic "turned to face Officer Capistran and started raising his gun . . . , and pointed it at the officer." (#1-5 at 196.) Consistent with the MAC's findings, the prosecutor said that Officer Capistran heard the initial gunshots, that he repeatedly told Peulic to drop the gun to no avail, and that Peulic had fired his gun into the air "less than one minute" prior to the confrontation. *Id.* at 195–96. In her closing statement, she repeated these assertions. *Id.* at 442, 448.

Officers Serrano and Capistran, as well as Dustin Chodrick, a third Chelsea police officer who was on the scene, all testified to similar accounts of the incident. *See id.* at 203, 280, 292. Officer Serrano initially said that, after Officer Capistran got out of his cruiser, he saw Peulic ignore Officer Capistran's demand to drop his gun and "actually turn[] towards [Officer Capistran] in the street and raise[] his hand, his right hand with a gun in it." *Id.* at 224. Officer Serrano later testified that he observed Peulic's gun to have been "pointed [t]owards Officer Capistran." *Id.* at

3

233. Officer Capistran testified that, before he fired his weapon, he observed Peulic turn towards him and begin "to raise his firearm up at" him. *Id.* at 302. Officer Capistran testified that because he thought he was "in clear immediate danger [for his] life[,]" he fired three rounds, shooting and striking Peulic. *Id.* at 302–04. Officer Serrano testified that he then secured Peulic's gun, while Officer Chodrick put handcuffs on Peulic. *Id.* at 225. The three officers searched Peulic for any additional weapons, administered first-aid, and waited for an ambulance to arrive. *Id.* at 225–27.

In his opening statement at trial, Peulic's counsel made clear that the trial was about whether Peulic was guilty of the assault charge: he conceded Peulic's guilt on the other charges, saying that Peulic was "not contesting that [he] was carrying a firearm . . . , that he had no business carrying that firearm, [and] that he certainly had no business running around Chelsea with it, apparently firing it down Broadway." *Id*. at 199.

The trial judge charged the jury that, in order to find Peulic guilty, "the Commonwealth must prove three elements, each beyond a reasonable doubt: that [Peulic] committed an assault; that [Peulic] intended to commit the assault; and that the assault was with a dangerous weapon." *Id.* at 482–83. She further instructed the jury that "[a]n assault occurs when the defendant[,] with the intent to cause apprehension of immediate bodily harm[,] does some act that causes such apprehension[.]" *Id.* at 483. Finally, she explained that the Commonwealth must prove the following for Peulic to have committed an assault: (1) "beyond a reasonable doubt that [Peulic] possessed the intention to cause apprehension or fear of immediate bodily harm"; (2) "that [Peulic] intentionally engaged in conduct of the sort that would raise a reasonable apprehension of bodily harm"; and, (3) "as a result of the threatened conduct[,] Officer Capistran did, in fact, experience a reasonable fear of immediate physical harm." *Id.* at 483–84. The trial judge provided the following examples of what may constitute an assault: "[P]ointing a machete in a threatening way

at a person may constitute assault. However, when a person utters threatening words to a person unaccompanied by any such conduct[,] [that] generally is not sufficient to constitute assault." *Id.* at 484.

During deliberations, the jury asked a question: Whether the weapon had to be pointed at Officer Capistran in order to constitute an assault? *Id.* at 516. After consulting with the parties, the trial judge responded:

> [W]hether assault by means of a dangerous weapon occurs depends on what facts you find. What is required is that the defendant intentionally engaged in conduct of the sort that would raise a reasonable apprehension of bodily injury.
>
> This determination can be made on the basis of the facts and circumstances you find surrounding the alleged crime including how the weapon's potential for harm would have appeared to a reasonable observer.

*Id.* at 586.

Peulic argued on appeal that the trial judge's answer to the jury's question improperly conveyed that the jury need not find that Peulic pointed the gun at Officer Capistran in order to convict him on the assault charge. *Id.* at 609. While Peulic conceded that "there . . . is no per se requirement that someone point a firearm at another to be guilty of [assault with a dangerous weapon] by firearm[,] Peulic did have to point his firearm at Officer Capistran" in order to be found guilty "on the facts of this case[.]" *Id.* at 714.

In rejecting Peulic's argument, the MAC explained that the law is clear that a person need not have pointed a firearm at another person in order to be guilty of assault with a dangerous weapon, as the specific act of pointing the firearm is not an element of the offense. *Id.* at 740. The MAC further rejected Peulic's argument that the Commonwealth's case here was limited to the allegation that Peulic had pointed his gun at Officer Capistran:

> Based on Capistran's and Serrano's testimony, the jury could have found either that the defendant raised the firearm without pointing it at Capistran, or that he both

5

>raised and pointed it. Defense counsel noted this distinction several times in his closing, arguing for example that Serrano's testimony started off as a raised gun, and then with a little bit more questioning became pointed the gun. Thus, had the trial judge answered yes to the jury's question, as [Peulic] suggests she should have, she would have been commenting on factual issues as to which she was not authorized to speak. It was for the jury to decide what the defendant did with the firearm and whether his conduct constituted assault. The judge did not abuse her discretion in declining to resolve these factual issues herself.

*Id.* at 740–41 (internal citations and quotation marks omitted).

## IV. Legal Standard.

Under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254, the petitioner bears the burden of showing that "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  The court may grant habeas relief only if the adjudication on the merits below (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2); *see Bebo v. Medeiros*, 906 F.3d 129, 134 (1st Cir. 2018) (citations omitted) (federal habeas relief is granted "only in cases in which all fairminded jurists would agree that a final state court decision is at odds with the Supreme Court's existing precedents"), *cert. denied*, 139 S. Ct. 1203 (2019); *Pena v. Dickhaut*, 736 F.3d 600, 603 (1st Cir. 2013) (quoting *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013) (this "highly deferential" standard of review "requires the petitioner to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement'")).

A decision by a state court is contrary to clearly established law if the state court "applies a rule that contradicts the governing law set forth by the Supreme Court," or when it reaches a

different result from a Supreme Court decision under a set of facts that are "materially indistinguishable." *Hensley v. Roden*, 755 F.3d 724, 731 (1st Cir. 2014) (quoting *Gomes v. Brady*, 564 F.3d 532, 537 (1st Cir. 2009)), *cert. denied*, 574 U.S. 1086 (2015). An unreasonable application of law occurs when:

> the state court correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.

*Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir. 2007) (citations omitted), *cert. denied*, 553 U.S. 1098 (2008). To be unreasonable, a decision must be "outside of the universe of plausible, credible options." *Hensley*, 755 F.3d at 737 (citing *Sanna v. Dipaolo*, 265 F.3d 1, 13 (1st Cir. 2001)).

With regard to whether the state court adjudication led to a decision that was based on an unreasonable determination of the facts, "[t]hough this means that a federal court will be taking a closer look at a state court's finding of facts, the fundamental principle of deference to those findings still applies." *Hensley*, 755 F.3d at 732. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary[.]" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)).

V. <u>Discussion</u>.

Peulic argues that, by affirming his conviction "on the basis of a theory of factual guilt" different from that presented at trial, the MAC violated the due process rule articulated by the Supreme Court in *Dunn v. United States,* 442 U.S. 100 (1979) and *Chiarella v. United States,* 445 U.S. 222 (1980). (#1-1 at 16–18.) In *Dunn*, the Supreme Court held that "[t]o uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process." 442 U.S. at 106. The Court highlighted the importance of "a

defendant's right to be heard on the specific charges of which he is accused[,]" noting that "[it] is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." *Id.* at 106–07 (internal citations and quotation marks omitted) (reversing circuit court's decision, affirming petitioner's conviction, when charge was neither alleged in indictment nor was the basis of his conviction). In *Chiarella,* the Court reiterated that it could not "affirm a criminal conviction on the basis of a theory not presented to the jury." 445 U.S. at 236 (citations omitted). *See also Ortiz v. Dubois*, 19 F.3d 708, 716 (1st Cir. 1994) (a criminal defendant must have "an opportunity to be heard in a trial on the issues raised by" the charges against him); *Cola v. Reardon*, 787 F.2d 681, 693 (1st Cir. 1986) (in order for appellate theory to withstand scrutiny under *Dunn*, "it must be shown to be not merely before the jury due to an incidental reference, but as part of a coherent theory of guilt that . . . can be characterized as having been presented in a focused or otherwise cognizable sense").[4]

Peulic cannot establish that the MAC's decision, upholding his conviction for assault with a dangerous weapon, was contrary to, or involved an unreasonable application of, clearly established federal law. In *Dunn*, the petitioner was convicted of making inconsistent statements, in a grand jury and under oath at an attorney's office. 442 U.S. at 102–04. The Tenth Circuit found that while the statement in the attorney's office could not support a conviction under the statute in question, the petitioner's later statement at another hearing could satisfy the statute, and upheld

---

[4] While circuit cases do not constitute clearly-established law under § 2254 because they are not decisions of the Supreme Court, "an appellate panel may . . . look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent[.]" *Marshall v. Rogers*, 569 U.S. 58, 64 (2013).

the conviction. *Id*. at 105. The Supreme Court reversed because the jury had been instructed concerning the statement in the attorney's office, and not the later statement. *Id*. at 107.

Here, by contrast, the possibility of Peulic's conviction on the theory that he simply raised the gun was manifest from the outset to the end of the case. The indictment, which charged that Peulic "commit[ed] an assault upon [Officer Capistran] by means of a certain dangerous weapon, [a] firearm," (#1-5 at 567), defined the offense of assault broadly enough to allow for both theories: that Peulic committed an assault by raising the gun and pointing it, or by simply raising the gun. Then, the evidence at trial permitted a finding that Peulic had merely raised the gun, rather than pointing it at Officer Capistran. Officers Serrano and Capistran both testified that Peulic pointed the gun, but at other times said only that he raised it. *Id*. at 224, 233, 302, 307, 312-13. Defense counsel even commented on this in his closing argument, arguing that the officers' different statements demonstrated their lack of credibility. *Id*. at 429, 430.

It is true that in her closing argument, the prosecutor argued that Peulic pointed the gun at Officer Capistran, rather than raising it. *Id.* at 442, 448. Given the evidence at trial, however, the prosecutor's decision to argue one version of the facts did not foreclose the jury from convicting on another version, one that was supported by the record.[5]

Finally, the trial judge's instructions did not limit the jury to finding that Peulic pointed the gun at Officer Capistran in order to convict. Rather, the judge specifically explained that the determination whether Peulic "engaged in conduct of the sort that" would give rise to an assault

---

[5] Peulic relies on a statement by the prosecutor, where she said "that the only assault that occurred was the pointing of the firearm," to argue that this was the sole factual theory the prosecutor endorsed. (#1-1 at 3, 10, 16, 26 (citing #1-5 at 335).) However, the prosecutor made this statement in the context of discussing, outside the presence of the jury, whether there was a basis in the evidence for the lesser-included charge of simple assault. (#1-5 at 334–35.)

with a dangerous weapon could "be made on the basis of the facts and circumstances" the jury found "surrounding the alleged crime[,] including how the weapon's potential for harm would have appeared to a reasonable observer." *Id.* at 586.

*Dunn* stands for the fundamental principle that "due process requires a trial in which criminal defendants are able to confront the government's case." *Cola*, 787 F.2d at 696 (citing *Jackson v. Virginia*, 442 U.S. 307, 314 (1979)). Here, the indictment, the evidence at trial, the arguments of counsel, and the jury instructions, taken together, make clear that defense counsel was on notice that a conviction on the basis of Peulic's committing assault by simply raising the gun was in play. The record demonstrates that Peulic was aware of, and was able to defend against, the theory of his merely raising the gun throughout the trial, including during defense counsel's cross-examination of Officer Serrano regarding the police report he prepared (#1-5 at 276), during closing argument, when defense counsel used the terms "raised" and "pointed" interchangeably, *id.* at 428–29, and when defense counsel specifically argued that "the Commonwealth hasn't proven beyond a reasonable doubt that [Peulic] raised *or* pointed the gun at Officer Capistran." *Id.* at 438.

Peulic's argument that the MAC's opinion involved an "unreasonable determination of the facts" (#1-1 at 25) also lacks merit, for the reasons stated above.

VI. <u>Conclusion</u>.

The petition for writ of habeas corpus (#1) is denied.

July 6, 2020 /s/ M. Page Kelley
M. Page Kelley
Chief Magistrate Judge